Filed 2/10/16  P. v. Huynh CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> JOHN TAYLOR HUYNH, <br><br>     Defendant and Appellant. | B258509 <br><br> (Los Angeles County <br> Super. Ct. No. KA094327) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Thomas C. Falls, Judge.  Affirmed.

Patricia A. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General and Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and Andrew S. Pruitt, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant John Huynh was convicted of first-degree premeditated murder (Pen. Code, §§ 187, 189) and an allegation that he personally used a deadly weapon, a knife, was found to be true (Pen. Code, § 12022, subd. (b)(1)). He was sentenced to a term of 26 years to life in prison. Defendant appeals, challenging only the sufficiency of the evidence of premeditation and deliberation. We affirm.

## FACTUAL BACKGROUND

In 2001, when defendant was 17 years old, he killed his mother by stabbing her in the neck and subsequently slashing her throat and wrists. He then hired a day laborer to dig a hole in his backyard. He buried the body in the shallow grave, cleaned the blood off the walls, burned other evidence, and abandoned the home. He told everyone that his mother had returned to Vietnam. Nobody questioned defendant's explanation, and he appeared to get away with murder until 2011, when guilt compelled him to walk into a police station and confess the crime. He then accompanied police officers to the scene, and showed them where he had buried the body. The coroner's office excavated the grave, and discovered the victim's skeletal remains exactly as defendant had described.

At trial, the prosecution relied on defendant's recorded statements to police, both at the police station and at the crime scene, to establish defendant's guilt. Defendant had admitted to police that he had argued with his mother in an upstairs bedroom. He ran downstairs to the kitchen and grabbed a kitchen knife and plastic garbage bag. He returned upstairs and put the bag over his mother's head so she would not make a sound, although this was unsuccessful. He stabbed his mother in the neck repeatedly. He then placed her on the bed. She was still alive, so he cut her throat and wrists. He waited until she died.

At trial, Defendant offered evidence that he suffered from schizoaffective disorder, and that he had been undergoing psychotic episodes both when he killed his mother and when he confessed to the crime. He also suggested that he had killed his mother in self-defense, because she was an abusive parent who had attacked him with a metal rod. Contrary to his statement to the police that he had obtained the knife from the kitchen

2

downstairs, at trial defendant testified that the knife was simply at hand in the bedroom, and he had grabbed it instinctively to defend himself.

## STANDARD OF REVIEW

On appeal, defendant contends the evidence is insufficient to support the jury's finding of first-degree murder. "In determining whether the evidence was sufficient either to sustain a conviction or to support the denial of a section 1118.1 motion, the standard of review is essentially the same. [Citation.] ' "[W]e do not determine the facts ourselves. Rather, we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" ' " (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1182-1183.)

## DISCUSSION

A murder which is "willful, deliberate, and premeditated" is murder of the first degree. (Pen. Code, § 189.) " 'By conjoining the words "willful, deliberate, and premeditated" in its definition and limitation of the character of killings falling within murder of the first degree the Legislature apparently emphasized its intention to require as an element of such crime *substantially more reflection* than may be involved in the mere formation of a specific intent to kill.' [Citation.]" (*People v. Boatman* (2013) 221 Cal.App.4th 1253, 1264 (*Boatman*).) Deliberation " ' "means careful consideration and examination of the reasons for and against a choice or measure." [Citation.]' [Citation.] Premeditation 'means "To think on, and revolve in the mind, beforehand; to contrive and design previously." [Citation.]' [Citation.]" (*Ibid.*) " ' "[T]he true test is not the duration of time as much as it is the extent of the reflection." ' [Citation.]" (*Ibid.*)

In considering whether circumstantial evidence is sufficient to support a finding of premeditation and deliberation, courts consider three factors first set forth in *People v.*

3

*Anderson* (1968) 70 Cal.2d 15.  These factors are:  (1) planning activity; (2) motive; and (3) manner of killing.  Traditionally, courts uphold findings of first degree murder when there is evidence of all three types, or extremely strong evidence of type (1), or evidence of (2) combined with (1) or (3).  (*People v. Sanchez* (1995) 12 Cal.4th 1, 32, disapproved on another point in *People v. Drolin* (2009) 40 Cal.4th 390, 421 fn. 22; *Boatman, supra,* 221 Cal.App.4th at p. 1266.)  However, the *Anderson* factors simply set forth guidelines for analysis.  (*Boatman,* at p. 1270.)  "The *Anderson* analysis was intended as a framework to assist reviewing courts in assessing whether the evidence supports an inference that the killing resulted from preexisting reflection and weighing of considerations. It did not refashion the elements of first degree murder or alter the substantive law in any way."  (*People v. Thomas* (1992) 2 Cal.4th 489, 517.)  If the *Anderson* factors are not present, a finding of premeditation and deliberation can still be upheld based on substantial evidence from which rational jurors could have found that the killing was the result of preexisting thought and the careful weighing of considerations.  (*Boatman,* at p. 1270.)

We first consider the evidence of each of the *Anderson* factors.

The first factor is planning.  Defendant told police that he ran downstairs to obtain the knife and the plastic bag from the kitchen, then brought those items back to the bedroom where his mother was waiting.  The act of obtaining a weapon from another location and bringing it to kill the victim demonstrates planning.  (*People v. Perez* (1992) 2 Cal.4th 1117, 1126; *People v. Wharton* (1991) 53 Cal.3d 522, 547.)

The second *Anderson* factor is motive.  All non-accidental killings have some degree of motive; what matters for the *Anderson* analysis is if there is evidence of a motive that supports an inference that the killing was the result of pre-existing reflection and careful thought, not a rash impulse hastily executed.  (*Boatman, supra,* 221 Cal.App.4th at p. 1268.)  Defendant told police that his mother had been a burden on herself and on him.  He stated, "there was a huge boulder on my shoulder that was lifted when she passed."  Although not overwhelming, this is evidence of motive.

The third *Anderson* factor is the manner of killing. If the defendant stopped in the middle of the killing to get another weapon or make a secondary attack, that demonstrates evidence of premeditation. (*People v. Lewis* (2009) 46 Cal.4th 1255, 1293.) In this case, defendant admitted that after stabbing his mother in the neck repeatedly, he slit her throat and wrists so that she would die faster. While defendant explained that this was an act of mercy in that he believed his mother was, at that point, past the point of no return, it can also be interpreted as a secondary attack which evidences premeditation.

Other evidence supports a finding of premeditation, apart from the *Anderson* factors. Evidence of a defendant's conduct after the killing may constitute evidence of premeditation.[1] Specifically, we can consider evidence "inconsistent with a state of mind that would have produced a rash, impulsive killing." (*People v. Perez, supra,* 2 Cal.4th at p. 1128.) In this case, after defendant attacked his mother, he did not seek medical attention for her or remorsefully admit his crime. Instead, he buried the body, cleaned the crime scene of evidence, and attempted to start a new life, something he apparently achieved for nearly 10 years. This is evidence from which the jury could conclude that defendant's state of mind was not rash and impulsive but, instead, was cold and calculating.

Because there was evidence of each *Anderson* factor, as well as additional evidence of premeditation in defendant's post-murder conduct, the jury's verdict was well-supported. Defendant's argument to the contrary is based on his own testimony and his evidence of mental illness. The jury was free to disregard defendant's testimony, which contradicted his confession. As to defendant's mental illness, "[a] finding of deliberation and premeditation is not negated by evidence a defendant's mental condition was abnormal or his perception of reality delusional unless those conditions resulted in the failure to plan or weigh considerations for and against the proposed course of action." (*People v. Stress* (1988) 205 Cal.App.3d 1259, 1270.) The jury was properly instructed

---

[1] Post-killing conduct may also be considered as part of the third *Anderson* factor. (See *People v. Perez, supra,* 2 Cal.4th at p. 1128.)

on this point, and clearly concluded, on the evidence, that defendant's mental illness did not interfere with his ability to premeditate the murder.[2]

## DISPOSITION

The judgment is affirmed.


                                                    RUBIN, ACTING P. J.
WE CONCUR:


        FLIER, J.


        GRIMES, J.

---

[2]     Defense witness Dr. Pantea Farhardi, a forensic psychiatrist expert, testified that based on her 2013 examination, defendant suffered from schizoaffective disorder. But Dr. Farhardi testified only that it was "possible" that defendant suffered from a mental disorder at the time of the 2001 killing. She also testified that she did not know what symptoms defendant may have had in 2001. The jury was free not to credit this inconclusive testimony and conclude that defendant's premeditation was not affected by any mental disorder.